UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
LUISA D.,

                         Plaintiff,          <u>DECISION AND ORDER</u>
                                                1:23-CV-05148-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In April of 2018, Plaintiff Luisa D.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 10).

This case was referred to the undersigned on March 7, 2024. Presently pending is Plaintiff's Motion for Judgment on the Pleadings under

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 14). For the following reasons, Plaintiff's motion is due to be granted and this case is remanded for further proceedings.

## I. BACKGROUND

### A.   *Administrative Proceedings*

Plaintiff applied for benefits on April 4, 2018, alleging disability beginning December 22, 2016. (T at 425-33, 434-440).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  Hearings were held on September 10, 2019, and March 3, 2020, before ALJ Hilton Miller. (T at 94-107, 77-93).

On March 17, 2020, ALJ Miller issued a decision denying the applications for benefits. (T at 137-56).  Plaintiff's request for review was granted by the Appeals Council and the matter was remanded for further proceedings on January 5, 2021. (T at 157-62).

A hearing was held on October 20, 2021, before ALJ Raymond J. Prybylski. (T at 36-76).  Plaintiff appeared with an attorney and testified. (T at 48-67). The ALJ also received testimony from James L. Soldner, a vocational expert. (T at 68-73).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

B.    *ALJ's Decision*

On December 15, 2021, ALJ Prybylski issued a decision denying the applications for benefits. (T at 7-35).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 22, 2016 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2013 (the date last insured). (T at 13).

The ALJ concluded that Plaintiff's depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), sciatica, asthma, anemia, and bilateral primary osteoarthritis of the knee were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can occasionally climb ramps or stairs; occasionally stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases. (T at 16). The ALJ found Plaintiff limited to simple tasks;

capable of tolerating few, if any, workplace changes; precluded from interaction with the public; and limited to no more than occasional interaction with co-workers and supervisors. (T at 16).

The ALJ concluded that Plaintiff could not perform her past relevant work as a child monitor. (T at 27).

However, considering Plaintiff's age (39 on the alleged onset date), education (limited), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 27).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between December 22, 2016 (the alleged onset date) and December 15, 2021 (the date of the ALJ's decision). (T at 28-29).  On May 5, 2023, the Appeals Council denied Plaintiff's request for review, making ALJ Prybylski's decision the Commissioner's final decision. (T at 1-6).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on June 19, 2023. (Docket No. 1).  On November 20, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 14, 15).  The Commissioner interposed

a brief in opposition to the motion and in support of the denial of benefits, on January 22, 2024. (Docket No. 15).  On February 12, 2024, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 17).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.   *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two primary arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed, which undermines the RFC determination.  Second, she challenges the ALJ's step two severity analysis.  This Court will address both arguments in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the

claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a),

(b)(2).   The ALJ is required to "articulate how [he or she] considered the

medical opinions" and state "how persuasive" he or she finds each opinion,

with a specific explanation provided as to the consistency and

supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent

with evidence from other medical sources and non-medical sources." *Dany*

*Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. §

416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more

persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is

supported by relevant objective medical evidence and the medical source's

supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more

relevant the objective medical evidence and supporting explanations

presented by a medical source are to support his or her medical opinion(s)

or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." 20 C.F.R. §

404.1520 (c)(1), 416.920c(c)(1).

In the present case, the record contains numerous medical opinions. Plaintiff's challenge centers on the ALJ's decision to discount the assessments of two treating providers, Dr. Dobkin and Dr. Rowell. The Court will address these assessments in turn.

      1.   *Dr. Dobkin*

Dr. Laurence Dopkin, a psychiatrist, completed a medical source statement in May of 2021. He had been treating Plaintiff since October of 2014 and diagnosed PTSD, generalized anxiety disorder, and dysthymia. (T at 990). Dr. Dopkin opined that Plaintiff would be absent from work due to her impairments or treatment more than 3 times per month and had marked limitation with respect to maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; dealing with stress of semi-skilled and skilled work; working in coordination with or proximity to others; and completing a normal workday or workweek without interruptions from psychologically-based symptoms. (T at 991-92).

Dr. Dopkin assessed no/mild loss in Plaintiff's ability to make simple work-related decisions; remember locations and work-like procedure; and understand, remember, and carry out very short, simple instructions. (T at 992). He opined that Plaintiff had moderate limitation with respect to understanding, remembering, and carrying out detailed instructions;

maintaining attention and concentration for extended periods of time; and performing at a consistent pace without an unreasonable number and length of rest periods. (T at 992).

Dr. Dopkin stated that Plaintiff had moderate impairment as to interacting appropriately with the public; accepting instructions and responding appropriately to criticism from supervisors; and setting realistic goals or making plans independently. (T at 992). He assessed marked limitation in Plaintiff's ability to travel in unfamiliar places or use public transportation. (T at 992).

Overall, Dr. Dopkin opined that Plaintiff had moderate restriction in her activities of daily living; had moderate difficulties in maintaining social functioning; seldom experienced deficiencies of concentration, persistence, or pace; and experienced repeated episodes of deterioration or decompensation in work or work-like settings. (T at 993).

The ALJ found Dr. Dopkin's opinion not persuasive. (T at 25). For the following reasons, the Court finds this aspect of the ALJ's decision supported by substantial evidence and consistent with applicable law.

First, the ALJ's decision is supported by other medical opinion evidence of record.

Dr. Mentwab Wuhib performed a consultative psychiatric evaluation in May of 2018.  Dr. Wuhib diagnosed major depressive disorder (moderate) and unspecified anxiety disorder. (T at 773).  Dr. Wuhib found no evidence of limitation in Plaintiff's ability to understand, remember, or apply simple directions and instructions; use reason or judgment to make work-related decisions; sustain concentration and perform at a consistent pace; maintain hygiene; or have awareness of normal hazards and take appropriate precautions. (T at 773).

Dr. Wuhib assessed mild impairment with respect to understanding, remembering, and carrying out complex directions and with sustaining an ordinary routine and regular attendance. (T at 773).  Dr. Wuhib opined that Plaintiff had moderate impairment in her ability to interact appropriately with supervisors, co-workers, and the public and regulate her emotions, control her behavior, and maintain well-being. (T at 773).

Dr. Jeanne Villani performed a consultative psychiatric evaluation in October of 2019.  Dr. Villani diagnosed unspecified depressive disorder, social anxiety disorder, panic attacks, and post-traumatic stress disorder. (T at 887).  She found no limitation in Plaintiff's ability to use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; or sustain an ordinary routine and

regular attendance. (T at 887).  Dr. Villani opined that Plaintiff had mild impairment as to understanding, remembering, or carrying out simple or complex directions; sustaining concentration and pace; and regulating emotions, controlling behavior, and maintaining well-being. (T at 887).

Dr. M D'Ortona, a non-examining State Agency review physician, reviewed the record in June of 2018, and opined that Plaintiff had moderate impairment as to understanding, remembering, or applying information; mild limitation as to social interaction; moderate impairment as to concentration, persistence, or pace; and moderate limitation in adapting or managing herself. (T at 119).

These well-supported opinions provide support for the ALJ's decision to reject the more restrictive aspects of Dr. Dopkin's assessment.

Second, the ALJ's decision to discount the marked limitations identified by Dr. Dopkin is consistent with a reasonable reading of the record.  Although the treatment notes identify ongoing symptoms of anxiety and depression, Plaintiff's mental status examinations were consistently unremarkable, including good eye contact and hygiene; good impulse control; intact memory; logical, spontaneous, and goal-directed thought processes; unimpaired memory; adequate social skills; and intact concentration. (T at 681, 686, 705, 710, 731, 738, 742, 746, 750, 754, 758,

762, 772-73, 828, 886-87, 922, 927-28, 1011, 1014-15, 1018, 1023-24, 1028, 1033, 1038, 1042, 1051, 1056, 1065-66, 1080, 1084).

Although Plaintiff points to evidence showing a greater degree of limitation, the ALJ acted within his discretion in reconciling the record and finding the more extreme restrictions identified by Dr. Dopkin not persuasive.  *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination."); *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022)("To be sure, there is some evidence in the record that would support the conclusion that plaintiff had greater limitations than those the ALJ built into her RFC. But that is not the test.").

Moreover, the ALJ recognized limitations arising from Plaintiff's mental impairments and found her limited to work involving simple tasks, with few (if any) workplace changes, no interaction with the public, and no more than occasional interaction with co-workers and supervisors. (T at 16).

To the extent the record evidences impairment in Plaintiff's ability to meet the mental demands of basic work activity, including her capacity to maintain concentration, persistence, or pace; adapt or manage herself; and/or maintain regular attendance, the restrictions incorporated into the RFC determination adequately account for this impairment. *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also Duffy v. Comm'r of Soc. Sec.,* No. 17CV3560GHWRWL, 2018 WL 4376414, at *18 (S.D.N.Y. Aug. 24, 2018), *report and recommendation adopted,* No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018)("Mild or moderate limitations in concentration do not necessarily establish that a claimant is disabled, particularly where the ALJ limits the scope of work to unskilled, repetitive work.")(collecting cases); *see also Campos v. Saul*, No. 18CV9809 (DF), 2020 WL 1285113, at *23 (S.D.N.Y.

Mar. 18, 2020); *Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *13 (D. Conn. Oct. 19, 2020).

> 2. *Dr. Rowell*

Dr. Madden Rowell completed a medical source statement in May of 2021. Dr. Rowell, who had been Plaintiff's primary care physician since March of 2020, diagnosed generalized anxiety disorder, PTSD, and social anxiety. (T at 994). She reported that Plaintiff's experience of pain would "often" interfere with her attention and concentration and that Plaintiff had a severe limitation in dealing with work stress. (T at 995).

Dr. Rowell opined that Plaintiff could sit for 15 minutes before needing to alternate positions for about 15 minutes; could sit for 4 hours total during an 8-hour workday; could stand or walk for about 15 minutes before needing to alternate positions and sit; could only stand or walk about 4 hours total in a workday; could occasionally lift and carry up to 10 pounds and frequently up to five pounds; could occasionally balance, flex or rotate her neck, but never stoop; and could frequently reach, handle, and finger with her hands. (T at 995-98). Dr. Rowell assessed that Plaintiff would miss about three days of work per month. (T at 998).

The ALJ found Dr. Rowell's opinion not persuasive. (T at 25).  The Court concludes that this aspect of the ALJ's decision cannot be sustained and must be revisited on remand.

As discussed further below, multiple medical opinions, including Dr. Rowell's assessment, showed that Plaintiff could not meet the demands of light work, including (in particular) as it relates to prolonged standing and walking. *See Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir.2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8–hour workday, with sitting occurring intermittently during the remaining time.").

During the first administrative hearing in September of 2019, Dr. Allan R. Goldstein testified as a medical expert. Dr. Goldstein testified that Plaintiff's impairments equaled the requirements of Sections 1.04A (disorders of the spine) and 2.07 (Disturbance of labyrinthine-vestibular function) of the Listings. (T at 100-01).

In support of this conclusion, Dr. Goldstein referenced findings of low back pain, abnormal gait, and dizziness (interfering with walking). (T at 100-01).  Dr. Goldstein believed this would cause Plaintiff to need more rest periods than usual during a normal workday. (T at 101).

During the March 2020 administrative hearing, Dr. Mike Buckwalter testified as a medical expert.  Dr. Buckwalter opined that Plaintiff's impairments did not meet or medically equal a Listing. (T at 82-83).  Dr. Buckwalter, however, noted evidence of chronic vertigo, sciatica of the lumbar spine, and chronic sprain of the cervical spine. (T at 83).  He limited Plaintiff to sitting for no more than 1 hour at a time, standing and walking for no more than 1 hour at a time, and no more than 6 hours of cumulative sitting, standing, or walking during an 8-hour workday. (T at 83).

The ALJ found each of the opinions of Dr. Rowell, Dr. Goldstein, and Dr. Buckwalter unpersuasive.  (T at 25-26).  The ALJ found the three physicians' assessments of physical limitations inconsistent with his reading of the record. Notably, however, in reaching this conclusion, the ALJ gave no apparent consideration to the consistency *between* the opinions.

In other words, it was error for the ALJ to neglect to consider that Plaintiff's long-term primary care physician and two medical experts retained by the Commissioner all shared the opinion that her ability to meet the physical demands of work activity, including (in particular) with respect to prolonged standing and walking, was more limited than the ALJ believed. *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL

3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

The concerns outlined above are amplified by the ALJ's consideration of assessments provided by Dr. Sharon Revan, a consultative examiner. Dr. Revan performed two consultative examinations, the first in May of 2018 and the second in October of 2019.

In the first evaluation, Dr. Revan assessed mild limitation as to sitting and lying down due to low back pain; mild limitation as to walking and standing due to balance issues; and mild limitation in activities of daily living due to anxiety. (T at 768).  In the second evaluation, Dr. Revan opined that Plaintiff had moderate limitation with walking, standing, sitting, and lying down for prolonged periods and mild to moderate impairment with personal grooming and activities of daily living. (T at 892).

The ALJ found persuasive, and relied on, the opinions of Dr. Sharon Revan in deciding to discount Dr. Rowell's assessment and in support of the conclusion that Plaintiff could meet the demands of a limited range of light work. (T at 23-24).

Dr. Rowell's finding of moderate limitation as to walking and standing for prolonged periods, however, does not necessarily support the conclusion that Plaintiff can perform light work and, instead, gives rise to doubt as to that question. *See O'Connor v. Berryhill*, No. CV 16-4395 (ADS) (GRB), 2018 U.S. Dist. LEXIS 168280, at *37 (E.D.N.Y. Aug. 30, 2018)(ALJ could not rely on undefined assessment of "mild to moderate" limitation to support conclusion that claimant could perform light work); *see also Malone v. Comm'r of Soc. Sec.*, No. 08-CV-1249 GLS/VEB, 2011 U.S. Dist. LEXIS 20349, 2011 WL 817448, at *10 (N.D.N.Y. Jan. 18, 2011) ("At a minimum, an assessment of moderate limitation suggests a possibility that prolonged standing might pose a problem."); *Carroll v. Colvin*, No. 13-CV-456S, 2014 U.S. Dist. LEXIS 88819, at *9 (W.D.N.Y. June 30, 2014)("Dr. Balderman's report is not the clean bill of health that the ALJ suggests it is. Indeed, even Dr. Balderman, whose opinion received greater weight, found that Carroll suffered from moderate limitations in prolonged

sitting and standing. This is not necessarily compatible with an ability to perform light work, as defined by the regulations.").

Lastly, the ALJ failed to perform a function-by-function assessment of Plaintiff's work-related abilities.

It is well-settled that before determining a claimant's RFC based on exertional levels (sedentary, light, medium, heavy, or very heavy), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945.

The work-related functions include physical abilities (standing, sitting, walking, lifting, carrying, pushing, pulling), mental abilities (understanding, remembering, carrying out instructions, and responding to supervision), and other abilities that may be impacted by impairments (seeing, hearing, ability to tolerate environmental factors). *See* SSR 96-8P; *see also* 20 C.F.R. § 404.1545(b)-(d); id. § 416.945; *Cichocki*, 729 F.3d at 176.

Although the Second Circuit has not applied a per se rule requiring remand in cases where ALJ did not provide an "explicit" function-by-function analysis, *see Cichocki*, 729 F.3d at 176; *compare Burrows v.*

*Barnhart*, No. 3:03CV342, 2007 WL 708627, at *13 (D. Conn. Feb. 20, 2007)("[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce [ ] a detailed statement in writing"), *with McMullen v. Astrue*, No. 5:05-cv-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) (remanding because "the ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis") the Second Circuit has held that "remand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichock*i, 729 F.3d at 177.

Here, the ALJ failed to assess Plaintiff's capacity to perform relevant functions, including her ability to engage in prolonged standing and walking, despite contrary evidence in the record (including assessments from a treating physician and two medical experts), and with inadequacies in his analysis, as outlined above, that frustrate meaningful review.  A remand, therefore, is necessary. *See Gomez v. Saul*, No. 1:19-CV-04708 (ALC), 2021 WL 1172674, at *13 (S.D.N.Y. Mar. 29, 2021).

B.    *Step Two Analysis*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co workers and usual work situations." *Gibbs v. Astrue*, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l) (5).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*,

No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ found that Plaintiff's depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), sciatica, asthma, anemia, and bilateral primary osteoarthritis of the knee were severe impairments. (T at 13).  The ALJ recognized Plaintiff's carpal tunnel syndrome as a medically determinable impairment but found that it was non-severe. (T at 13).

The ALJ did not err in this aspect of his decision.  The ALJ discussed Plaintiff's treatment, consisting of physical therapy and a wrist brace, and referenced examination findings evidencing no gross sensory or motor deficits. (T at 13, 966, 973). Dr. Revan found that Plaintiff had intact hand and finger dexterity, full grip strength, and full range of motion in the wrists bilaterally. (T at 768, 892).  Dr. Rowell, Plaintiff's long-term treating primary care physician, opined that she could perform frequently reaching, handling, and fingering bilaterally. (T at 998).

Further, any arguable step two error regarding this impairment was harmless.  The ALJ found that Plaintiff had severe impairments within the meaning of the Social Security Act and continued the sequential analysis. The ALJ also expressly stated that he had considered all of Plaintiff's

medically determinable impairments, including the non-severe impairments, wherein formulating the RFC determination. (T at 13).

Plaintiff has not pointed to any well-supported limitations specifically related to carpal tunnel that the ALJ neglected to consider when assessing his RFC.  The Court thus finds no reversible error in the ALJ's step two analysis.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)("Because these conditions were considered during the subsequent steps, any error was harmless.")(citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010).

C.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

Here, for the reasons outlined above, the Court finds a remand necessary for proper assessment of Plaintiff's physical limitations, including appropriate consideration of the medical opinion evidence and a function-by-function analysis of Plaintiff's capacity to perform relevant functions, including prolonged standing and walking.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED, and this case is remanded for further proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: June 3, 2024                    *s / Gary R. Jones*

                                                GARY R. JONES
                                                United States Magistrate Judge